UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSAGIE ERHABOR,<br><br>    Plaintiff,<br>v.<br><br>COLLECTION BUREAU OF THE HUDSON VALLEY, INC.,<br><br>    Defendant. | Case No.: 1:25-cv-00178<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.  **FDCPA, 15 U.S.C. § 1692** *et seq*.<br>2.  **NY GENERAL BUSINESS LAW § 349** *et seq.* |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Osagie Erhabor ("Plaintiff") alleges that Collection Bureau of the Hudson Valley, Inc. ("Defendant" or "CBHV") has violated his rights as provided by the Fair Debt Collection Practices Act:

**INTRODUCTION/PRELIMINARY STATEMENT**

1.  This is an individual FDCPA action brought by a consumer seeking statutory damages, actual damages, and additional damages as the Court may allow based upon violations of 15 U.S.C. §§ 1692e(2)(A), e(10) and f(1), plus attorneys' fees and costs. The FDCPA prohibits debt collectors from engaging in abusive, misleading/deceptive, and unfair collection practices.

2.  Congress enacted the Fair Debt Collection Practices Act ("the FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress expressed concern that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws…[we]re inadequate to protect consumers," and that

1

"the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "[e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. § 1692(e). After determining that the existing consumer protection laws were inadequate. *Id*. § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id*. § 1692k.

## JURISDICTION AND VENUE

4. The District Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as Defendant conducts business in the Eastern District of New York and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Osagie Erhabor ("Plaintiff") is a natural person obligated or allegedly obligated to pay any debt, and he is therefore a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3). Plaintiff resides in Brooklyn, New York, which is within the Eastern District of New York.

8. Collection Bureau of the Hudson Valley, Inc. ("Defendant" or "CBHV") is a corporation that regularly conducts business in New York on a routine and systematic basis. Defendant's principal place of business is 155 North Plank Road, Newburgh, New York 12550. Defendant is in the business of contacting consumers to collect consumer debt.

9. Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is therefore a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. §1692a(6). Defendant regularly uses the telephone and mail to engage in the business of collecting debts and/or alleged debts from consumers in several states, including New York.

10. Any violations by Defendant as set forth in this Complaint were knowing and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

11. During all time pertinent to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

12. Plaintiff works as a direct support assistant with Brooklyn Developmental Center ("BDC"), and Plaintiff's work requires providing care to patients with mental disabilities. While working on or about May 16, 2024, Plaintiff suffered an injury to his chest, with subsequent medical diagnoses confirming that Plaintiff suffered a traumatic injury.

13. Plaintiff received immediate medical treatment for his workplace injury from Assist Ambulance.

14. Following his injuries sustained on or about May 16, 2024, Plaintiff submitted an assertion of his worker's compensation rights on or about June 5, 2025, thereby rendering him a worker's compensation claimant.

15. Furthermore, on or about November 7, 2024, the claim was established by the Worker's Compensation Board granting worker's compensation protection and insurance coverage for the workplace injuries Plaintiff sustained on or about May 16, 2024, (WCB Case No. G3850612). The notice of decision further included the worker's compensation insurance carrier—New York State Insurance Fund (the "WC Carrier" or "NYSIF")—and the Carrier Case No. 74671249-183, demonstrating the Carrier's responsibility for the medical expenses arising from the workplace injury.

16. New York's workers' compensation statutes are clear regarding the collection of medical bills related to workers' compensation claims. The New York Workers' Compensation Law explicitly prohibits healthcare providers from collecting or receiving fees directly from compensation claimants within the state for medical care or treatment provided in relation to workers' compensation claims. N.Y. Workers' Comp. Law § 13-f (1).

17. Furthermore, the New York Workers' Compensation Law specifically states that the employee is not responsible for bills for medical care related to a workplace injury, but rather, it is the employer who "must pay the bill or notify the medical care provider or supplier in the format prescribed by the chair that the bill is not being paid and explain the reasons for non-payment." N.Y. Workers' Comp. Law § 13-g(1).

18. Instead, providers must seek payment solely from the employer through the provisions outlined in the workers' compensation statute. *Id*. This law is designed to protect injured workers from bearing the financial burden of work-related medical expenses.

Furthermore, if a claimant has mistakenly paid any fees to a healthcare provider for treatment covered under workers' compensation, they have a legal right to recover those payments. The law even allows for this right of recovery to be assigned to the chair of the Workers' Compensation Board, who may then pursue legal action against the provider on behalf of the claimant to recoup the improperly collected fees.

19. As stated above, on or about May 16, 2024, Plaintiff received medical services from Assist Ambulance in relation to the treatment of the workplace injury that Plaintiff had sustained.

20. Since Plaintiff is a worker's compensation claimant insofar as he submitted his worker's compensation assertion of rights form to the Worker's Compensation Board, and especially since the Worker's Compensation Board established the compensability of his workplace injuries suffered, Plaintiff is not responsible for any portion of the medical bills for services rendered in connection with the claim and is not responsible for payment of any disputed amount between the WC Carrier and Assist Ambulance.

21. Despite this, Plaintiff received multiple debt collection letters from Defendant, on or around September 24, 2024, and on or around November 3, 2024, seeking to collect amounts purportedly owed for services rendered by Assist Ambulance in connection with Plaintiff's workplace injury (the "Collection Letters").

22. Defendant prominently identified itself as a debt collector in the Collection Letters and unequivocally stated that they are looking to collect a debt that Plaintiff purportedly owed to Assist Ambulance.

5

23. In the Collection Letters, Defendant indicated that Plaintiff owed $1,776.00 in connection with the services rendered by Assist Ambulance and that it would use any information Plaintiff provided to help collect the debt.

24. Aside from the letters Plaintiff received seeking to collect amounts owed in relation to services rendered in connection with Plaintiff's workplace injury, Plaintiff received numerous text messages seeking to collect this unlawful amount. The dates of reception of these text messages include but are not limited to on or around October 25, 2024, November 11, 2024, December 2, 2024, and December 18, 2024.

25. Defendant designed these communications as a demand for payment, indicating to consumers like Plaintiff that an outstanding balance was owed and payment was due on the debt. The Collection Letters and numerous text messages instructed Plaintiff to pay the debt.

26. Upon information and belief, Defendant included language in the Collection Letters and text messages to make Plaintiff believe that he was legally responsible for the subject debt.

27. The Collection Letters are misleading when construed as a whole, as Defendant demanded payment for a debt that Plaintiff was not legally responsible for pursuant to N.Y. Workers' Comp. Law §§ 13-f (1), 13-g(1), and the letters prominently featured payment demands and payment instructions.

28. The text messages are misleading when construed as a whole, as Defendant demanded payment for a debt that Plaintiff was not legally responsible for pursuant to N.Y. Workers' Comp. Law §§ 13-f (1), 13-g(1), and the letters implicitly and/or explicitly featured payment demands and payment instructions.

29. Upon information and belief, Defendant had actual knowledge or was on notice that Plaintiff was not legally obligated to pay the alleged debt because the debt was based on medical services rendered in connection with a workers' compensation claim, and/or an established worker's compensation claim.

30. Defendant knew or reasonably should have known, that the alleged debts it was attempting to collect from Plaintiff derived from a workers' compensation claim, and/or an established worker's compensation claim, and that Plaintiff is not liable for the alleged debts pursuant to New York Worker's Compensation law.

31. Upon information and belief, Defendant knew or was otherwise on notice that some of the debts it attempts to collect are debts that are not valid because the debts derive from medical services rendered in connection with workers' compensation claims.

32. Upon information and belief, Defendant does not attempt to determine whether the debts it seeks to collect derive from medical services rendered in connection with workers' compensation claims (and are invalid), even though Defendant is on notice that many of the debts it attempts to collect so derive.

33. Defendant's numerous attempts to collect an alleged debt from Plaintiff were deceptive, misleading, unfair, unconscionable, and plainly violated numerous provisions of the FDCPA.

34. Defendant's collection efforts caused Plaintiff to suffer concrete and particularized injuries and harm. Defendant injured Plaintiff by—on numerous occasions—trying to extract money from Plaintiff that he did not owe and which Defendant was not entitled to collect from Plaintiff. Defendant's collection efforts caused distress to Plaintiff, as he, upon receiving the Collection Letters and text messages, worried that he owed a sum of money for his

medical treatment that he did not actually owe. Plaintiff was extremely distressed because he worried that he might have been mistaken about his legal obligation to pay the purported debt and might face legal consequences for not doing so.

35. Plaintiff also suffered distress upon receipt of the Collection Letters and text messages, as it triggered painful memories of Plaintiff's accident.

36. Plaintiff experienced additional distress due to his constrained financial circumstances at the time he received the Collection Letters and text messages. Upon receipt of the debt collection notice, Plaintiff experienced anxiety, believing he would need to reallocate his limited financial resources to satisfy this purported debt. This caused him considerable stress as he contemplated how to adjust his budget to accommodate this unexpected financial obligation, despite not being legally responsible for its payment.

37. Additionally, Plaintiff suffered economic damages in the form of a fee to have a necessary review of his credit reports conducted.

38. Specifically, Plaintiff was aware of Defendant's practice of leveraging and threatening to report collection debts to credit reporting bureaus as a tactic to extract payment from consumers. This knowledge caused Plaintiff to fear that the unlawful debt collection account was being inaccurately reported to the credit bureaus, thereby diminishing his credit prospects and overall creditworthiness. To address this concern, Plaintiff obtained his credit reports and paid a fifty-dollar ($50.00) fee to ensure that the unlawful debt collection account was not being improperly reported. This financial expense was a direct result of Defendant's unlawful collection attempt and the resulting anxiety regarding potential damage to Plaintiff's credit standing.

39. Furthermore, Defendant's unlawful debt collection attempt also caused Plaintiff to expend valuable time attempting to rectify the situation. Plaintiff was forced to consult with his workers' compensation attorney to address the medical debt and ensure it was properly covered under his workers' compensation claim, as he feared he might have lost his coverage. This time-consuming process detracted from Plaintiff's ability to focus on more productive and meaningful pursuits, including but not limited to personal responsibilities. The diversion of his time and energy compounded the distress caused by Defendant's unlawful actions and further underscores the harm inflicted on Plaintiff.

40. As a result of Defendant's conduct, Plaintiff has sustained actual damages including, but not limited to, economic and financial harm, embarrassment, stress and anxiety, lost sleep, emotional and mental pain, and anguish.

## COUNT I
## DEFENDANT'S VIOLATIONS OF
## FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(2)(A)

41. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. The FDCPA is a comprehensive regulatory scheme that Congress enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. §§ 1692(a), (e).

43. When Congress enacted the FDCPA in 1977, Congress had found that abusive debt collection practices harmed consumers by, among other things, increasing personal bankruptcy, marital instability, loss of employment, and invasion of privacy.

44. Defendant used the mail and text messaging to pursue an uncollectible debt against Plaintiff.

45. Upon information and belief, Defendant utilizes these false, deceptive, misleading, unfair, and unconscionable tactics as a matter of course when attempting to collect debts from consumers such as Plaintiff, despite the fact that Defendant knew or should have known that the alleged debt derived from medical services rendered in connection with an accepted workers' compensation claim.

46. Defendant's conduct is intentional and Defendant did not maintain procedures reasonably adapted to avoid such conduct.

47. Defendant violated § 1692e(2)(A) of the FDCPA by misrepresenting the legal status of the alleged debt that Defendant attempted to collect from Plaintiff. Defendants' misrepresentations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer. 15 U.S.C. § 1692e(2)(A).

48. Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

49. Defendant's debt collection actions, including sending the Collection Letters and text messages, used false, deceptive, or misleading representations or means in connection with the collection of a debt.

50. As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, frustration and lost sleep. Plaintiff is entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## COUNT II
## DEFENDANT'S VIOLATIONS OF
## FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10)

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Defendant further violated the FDCPA by making false and deceptive representations that Plaintiff owed a debt that he did not legally owe.

53. The alleged debt was in fact not legally owed because it derived from medical services rendered in connection with a workers' compensation claim. Defendant could not legally collect the alleged debt from Plaintiff.

54. Defendant's representations were made knowingly and with the intent to deceive and coerce the least sophisticated consumer in order to induce payments for alleged debt that is uncollectable as a matter of law.

55. Defendant's debt collection actions constituted false, deceptive, or misleading representations or means used by Defendant in connection with the collection of a debt.

56. As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, frustration and lost sleep. Plaintiff is entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## COUNT III
## DEFENDANT'S VIOLATIONS OF
## FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f(1)

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. Defendant further violated the FDCPA by using unfair or unconscionable means to collect a debt.

59. Defendant's unfair and unconscionable means include, without limitation:

   a. Attempting to collect an alleged debt from Plaintiff that derived from medical services rendered in connection with an workers' compensation claim, for which collection was "not permitted by law" pursuant to 15 U.S.C. § 1692f(1);

   b. Misleading Plaintiff as to the validity of the debt; and/or

   c. Attempting to coerce, pressure and/or deceive Plaintiff into paying money that he did not in fact owe.

60. Defendant's debt collection actions were false, deceptive, or misleading representations or means used in connection with the collection of an alleged debt.

61. As a result of Defendant's actions, Plaintiff suffered injuries in fact, including but not limited to, the above-referenced economic damages, emotional distress, anxiety, embarrassment, humiliation, frustration, and lost sleep. Plaintiff is also entitled to recover actual damages, statutory damages, declaratory relief, injunctive relief, and attorneys' fees and costs.

## COUNT IV
## DEFENDANT'S VIOLATIONS OF
## NEW YORK GENERAL BUSINESS LAW SECTION 349

62. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. New York General Business Law §349(a) declares that "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

64. It further relates that an individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded by the Court punitive damages and reasonable attorneys' fees incurred. *Id*.

65. As enumerated above, Defendant has violated N.Y. Gen. Bus. Law § 349 by engaging in deceptive acts and practices in the conduct of its business, which have a broad impact on consumers at large. Specifically, Defendant misrepresented the legal status of the alleged debt owed by Plaintiff by attempting to collect a debt that Plaintiff was not legally obligated to pay under New York Workers' Compensation Law. The Collection Letters and text messages sent by Defendant were crafted in a way that falsely suggested Plaintiff owed the debt, despite clear statutory provisions prohibiting the collection of medical bills related to workers' compensation claims directly from claimants. This misrepresentation therefore constitutes a deceptive practice under N.Y. Gen. Bus. Law § 349.

66. Defendant's deceptive conduct is part of a broader pattern and practice of failing to properly verify the legal validity of debts before initiating collection activities. Defendant failed to implement adequate procedures or systems to determine whether the debts it sought to collect were related to accepted workers' compensation claims—debts that, under New York law, injured workers who were claimants of workers' compensation insurance rights are not collectible from such worker's compensation claimants. This systemic failure not only led to the numerous deceptive collection attempts against Plaintiff but likely affects other consumers similarly situated, exposing them to unlawful debt collection practices and potential harm.

67. Defendant engages in this pattern and practice because it is more profitable to pursue debts indiscriminately than to implement proper verification systems that ensure compliance with the FDCPA. This failure to verify debts harms consumers by misleading them into believing they owe amounts they are not legally obligated to pay. In Plaintiff's case, the Collection Letters and text messages caused significant distress, leading him to question him financial obligations, incur unnecessary expenses to review his credit reports, and experience emotional distress.

68. The FDCPA violations enumerated in this complaint—misrepresenting the legal status of a debt (15 U.S.C. § 1692e(2)(A)), using deceptive means to collect a debt (15 U.S.C. § 1692e(10)), and attempting to collect an amount not authorized by law (15 U.S.C. § 1692f(1))—qualify as deceptive practices under N.Y. Gen. Bus. Law § 349. Defendant's misrepresentations and unfair practices directly harmed Plaintiff by inducing fear of credit and financial consequences, pressuring him to act defensively against an invalid debt, and causing economic and emotional damages.

69. Defendant's actions evidence a high degree of moral culpability and demonstrate reckless disregard for the rights of consumers, including Plaintiff. The deliberate and/or grossly negligent use of misleading debt collection communications and the refusal to verify the legitimacy of debts constitute willful or wanton negligence that transcends mere carelessness. Defendant's actions were designed to pressure consumers into paying debts they do not owe, exploiting their confusion and fear to maximize profit.

70. As a direct and proximate result of Defendant's violations of N.Y. Gen. Bus. Law § 349, Plaintiff has suffered compensable harm, including economic losses, emotional distress, and other damages. Plaintiff is entitled to preliminary and permanent injunctive relief to prevent

Defendant from continuing its deceptive practices against himself, as well as actual, treble, exemplary and punitive damages, together with reasonable costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the FDCPA and New York General Business Law § 349;

B. An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and N.Y. Gen. Bus. Law § 349(h);

C. Injunctive relief prohibiting Defendant's continued deceptive and unlawful debt collection practices against Plaintiff in violation of the FDCPA and N.Y. Gen. Bus. Law § 349;

D. An award of statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

E. An award of treble, exemplary and punitive damages as allowed under N.Y. Gen. Bus. Law § 349(h);

F. An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) and N.Y. Gen. Bus. Law § 349(h); and

G. Any pre-judgment and post-judgment interest as may be allowed under the law.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands a trial by jury in this action.

//

Dated: January 10, 2025

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, New York 11367
Telephone: 718-640-8123
F: (718) 715-1750
mrubinov@consumerattorneys.com

David Pinkhasov Bar No. 5925904
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, New York 11367
Telephone: 718-701-4605
dpinkhasov@consumerattorneys.com

Daniel Cohen, NY Bar # 5481460
**CONSUMER ATTORNEYS**
72-47 139th Street
Flushing, New York 11367
Telephone: (718) 770-7940
(718) 715-1750 (fax)
dcohen@consumerattorneys.com

*Attorneys for Plaintiff*
*Osagie Erhabor*